UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALAZZAWI,<br><br>Plaintiff,<br><br>v.<br><br>ENTERCOM, a Corporation; ENTERCOM CALIFORNIA, LLC, a Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:20-cv-02295-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

On September 30, 2020, Plaintiff David Alazzawi ("Plaintiff") initiated this lawsuit in the Superior Court of California, County of Sacramento, against his former employer Defendant Entercom California, LLC ("Defendant")[1] for alleged retaliation, failure to prevent discrimination, wrongful constructive termination in violation of public policy, declaratory relief, failure to pay overtime wages, failure to provide and record meal periods, failure to provide and/or pay for rest periods, failure to timely furnish accurate itemized wage statements, waiting time penalties, failure to timely pay wages upon separation of employment, and violation of California's Unfair Competition Law,

---

[1] The Complaint also names "Entercom, a corporation" as a defendant but according to Defendant, "it is not an existing legal entity, nor did it ever employ Plaintiff." Not. Removal, ECF No. 1, at 5 ¶ 11. In any event, Plaintiff's allegations generally refer to "Entercom" and thus the Court assumes they pertain to one Defendant.

California Business and Professions Code §§ 17200 et seq. ("UCL").  Ex. A, Not. Removal, ECF No. 1 ("Compl.").  Defendant subsequently removed the case to this Court on diversity grounds pursuant to 28 U.S.C. § 1332.  Not. Removal, ECF No. 1.  Presently before the Court is Defendant's Motion for Partial Summary Judgment.  ECF No. 11; see Def.'s Mem. ISO Mot. Partial Summ. J., ECF No. 12 ("Def.'s Mot.").  This matter has been fully briefed.  ECF Nos. 16 ("Pl.'s Opp'n"), 17 ("Def.'s Reply").  For the following reasons, Defendant's Motion is GRANTED in part and DENIED in part.[2]

## BACKGROUND[3]

In December 1999, Plaintiff began working at the Sacramento, California, radio station KSFM 102.5 FM (the "Station"), which was then owned and operated by CBS Radio of Sacramento, Inc. ("CBS Radio").  Ex. 1-D, Jones Decl., ECF No. 13-1, at 42 (Defendant's responses to Plaintiff's interrogatories).  According to Defendant,

> [Plaintiff] was a "mixer", which is sometimes referred to as a "DJ" and he was known as "DJ Alazzawi".  However, he was not "on-air talent", meaning [Plaintiff] did not speak live on the air during radio shows.  Instead, [Plaintiff] produced a "mix-show" that was used by the "on-air talent" during the three-hour Friday night show that ran from 5 p.m. to 8 p.m.  To provide time for the "on-air talent" to speak during radio shows, the mix-shows were usually two hours and forty-five minutes in length.
>
> Some weeks [Plaintiff] would create the mix-show from home and send the recorded show to the station, and some weeks he would use the station's studio to produce the mix-show before the show aired.  As a result, he and other mixers developed a following, and they would use the notoriety from their shows to promote their separate businesses.

Ex. 2, Buhrman Decl., ECF No. 13-2, at 3 ¶¶ 3–4; see also Pl.'s Opp'n, at 2 (stating

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

[3] Unless otherwise stated, the following undisputed facts are taken, sometimes verbatim, from Defendant's Separate Statement of Undisputed Material Facts and Plaintiff's response thereto.  ECF Nos. 12-1, 16-2.

2

Plaintiff's "duties were mainly that of a Radio DJ, known locally as DJ Alazzawi"). At all times during his employment, Plaintiff was under the age of 40.

In November 2017, Defendant acquired the Station as part of a merger with CBS Radio. On November 17, 2017, Plaintiff signed and dated Defendant's written "Employee Handbook Acknowledgement," which stated that it was his "responsibility to read the Handbook in its entirety" and his "employment [was] governed by the policies described in the Handbook . . ." See Ex. 1-F, Jones Decl., ECF No. 13-1, at 101. One such policy provided the following as to overtime hours:

> When operating requirements or other needs cannot be met during regular working hours, non-exempt employees may be required to work overtime. Non-exempt employees are not permitted to work overtime without written supervisory authorization received in advance of working such hours. All such overtime work must be recorded fully.

Ex. 3-A, Honeycutt Decl., ECF No. 13-3, at 5.

Following the merger, Defendant's management discussed strategies for improving the Station's performance and reducing its operating costs. On June 1, 2018, Defendant hired Michael Buhrman ("Buhrman") as the Station's new Program Director. Shortly thereafter, on June 18, 2018, Buhrman informed Plaintiff that his compensation would be changed for the following reasons:

> [Plaintiff] informed me that the only work he performed consisted of creating a single mix-show per week, which took him three hours or less to create. Because the "on-air talent" would speak live during the Friday 5 p.m. to 8 p.m. show, the mix-show was often in the range of two hours, forty-five minutes long. When I learned Plaintiff completed his work in three hours or less per week and that he earned $200 each week to produce his show, I believed his rate of pay was far above market rate and was too high compared to other mixers. I made the decision to change [Plaintiff's] compensation to an hourly rate because I believed that paying [Plaintiff] $200.00 per week to produce the Friday night show was a considerably higher rate of pay than the work warranted, and the station could not justify that level of compensation.
>
> Plaintiff's compensation was then changed to $20 per hour going forward, which was consistent with the amount other mixers at [the Station] were being paid.

Ex. 2, Buhrman Decl., ECF No. 13-2, at 3 ¶¶ 5–6.  Three days after Buhrman informed him of his compensation change, on June 21, 2018, Plaintiff sent the following email to Lucas Estrella ("Estrella"), Defendant's Human Resources Specialist:

> I wanted to express my concerns that I have observed since the combination of CBS and [Defendant].
>
> It appears from my observations that the older workers are continuously being replaced with younger workers.  For example:  [names omitted] were terminated and their replacements are much younger.  I feel this is an unlawful practice of Age Discrimination and makes me concerned as I am nearly 40 years of age.
>
> I am also concerned because the recent changes to my employment feel[] as though [Defendant] is forcing me out.  For example, historically I earned $400 [] per week.  On Monday (6/18/18) Mike Buhrman called me and informed me that my pay rate would change dramatically to minimum wage.  This is a substantial change, and I do not know if I can pay my bills due to this change.  I suggested some alternatives, even obtaining my own sponsors.  [Buhrman] refuted any of those suggestions.
>
> These changes to my employment make me feel as I am being forced out.  Given others who were older, and treated the same, I feel as these changes are directed at older employees.  I simply do not think this is fair and I believe it's unlawful.

Ex. 1.E, Jones Decl., ECF No. 13-1, at 82–83.  Estrella responded to Plaintiff's email that same day, stating: "I appreciate you sending your concerns my way.  Please let me review this and I will be in contact with you soon."  Ex. 1-A, Clark Decl., ECF No. 16-4, at 9.  However, Plaintiff did not receive a follow-up response.  On August 1, 2018, Plaintiff emailed Vince Richards, Defendant's Director of Programming and Operations, requesting "a letter from Human Resources stating the previous pay [of $200 per week] to the new hourly pay [of $20 an hour] that will be applied moving forward."  Ex. 1.E, Jones Decl., ECF No. 13-1, at 86.

      Buhrman also decided to make programming changes that he thought would improve the Station's performance, and one of those changes was to move Plaintiff's program from Friday night to Saturday night between 8 p.m. to 11 p.m.  On August 27, 2018, Buhrman emailed Plaintiff notifying him of this change and stating that he

previously asked the mixers to provide their "Photos/bios to update [the] Club 102 section" and to "pump[] up their mix shows on social media," but Plaintiff was the only one who had not done either. See id. at 88. Defendant asserts that the change in Plaintiff's schedule would not alter the number of hours Plaintiff worked, the pay he received, the work he performed, or the location of his work, but Plaintiff claims without explication that the Friday night programming and mix required more work than a Saturday night into Sunday shift.

The following day, on August 28, 2018, Plaintiff replied to Buhrman's email, stating that he "always delivered high ratings" in the Friday night slot, Buhrman's justification based on Plaintiff's "lack of social media presence is false," "Saturday evening[] is not a prime radio listening market," and that such a change puts his marketing image and branding at risk. See id. at 87–88. Plaintiff then stated:

> I can only speculate that this change stems from my complaints of Age Discrimination. I was simply trying to ensure a workplace free of discrimination and retaliation by voicing what is apparent to everyone, and shortly after my complaints, I'm being retaliated against by this drastic schedule change. I simply cannot accept the change from Friday evenings to late Saturday night.
>
> After 19 years of dedicated service to [the Station], it saddens me that I must resign due to these changes. Please mail me my final wages.

Id. at 88. Buhrman states in his declaration that prior to Plaintiff's email, he "had no knowledge of [Plaintiff's] complaint of age discrimination." Ex. 2, Buhrman Decl., ECF No. 13-2, at 4 ¶ 9; but see Ex. 1-A, Clark Decl., ECF No. 16-4, at 7 (email from Estrella to human resources director forwarding Plaintiff's June 21, 2018, email to her and stating that Estrella and Buhrman discussed Plaintiff's compensation change). On August 30, 2018, Defendant sent Plaintiff his final paycheck in a FedEx package for overnight delivery to Plaintiff's home address, which Plaintiff received the following day. See Exs. 3-B, 3-C, and 3-D, Honeycutt Decl., ECF No. 13-3, at 6–11.

///

///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

6

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

7

## ANALYSIS

Defendant moves for summary judgment on Plaintiff's prayer for punitive damages and all of Plaintiff's causes of action except the Eighth Cause of Action for failure to timely furnish accurate wage statements. See ECF No. 11. Accordingly, the Court will address each of the challenged claims in turn.

### A. First Cause of Action: Retaliation in Violation of California's Fair Employment and Housing Act ("FEHA")

California Government Code § 12940(h) prohibits "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." To establish a prima facie case of retaliation under FEHA, a plaintiff must show: (1) the employee engaged in a protected activity; (2) the employee was subject to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005); see also Arcure v. Cal. Dep't of Dev. Servs., No. 1:13-cv-00541-MJS (PC), 2016 WL 3940345, at *11 (E.D. Cal. July 20, 2016) ("[T]he causal link under FEHA may be established by showing that the protected activity was a substantial motivating reason for the adverse employment action.") (emphasis in original). "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." Yanowitz, 36 Cal. 4th at 1042. "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." Id.

Plaintiff alleges that he suffered several adverse employment actions, the first one being that his compensation was "slashed" from $200 a week to an hourly rate of $20. See Pl.'s Opp'n, at 7. However, the reduction in pay occurred before Plaintiff

1  complained of age discrimination and the reasons behind the reduction are undisputed,

2  none of which are related to age. See Pl.'s Response Def.'s Separate Statement of

3  Undisputed Facts, ECF No. 16-2 ¶ 9; Ex. 2, Buhrman Decl., ECF No. 13-2, at 3 ¶¶ 5–6

4  (determining "that paying [Plaintiff] $200.00 per week to produce the Friday night show

5  was a considerably higher rate of pay than the work warranted," and that $20 an hour

6  was "consistent with the amount other mixers at [the Station] were being paid.").

7      Second, Defendant moved Plaintiff's timeslot from Friday night between 5 p.m.

8  and 8 p.m. to Saturday night between 8 p.m. to 11 p.m., which Plaintiff claims was done

9  in response to his complaint "that the reduction in his pay was likely due to age

10  discrimination." Pl.'s Opp'n, at 6; see also Ex. 1.E, Jones Decl., ECF No. 13-1, at 82–83

11  (Plaintiff's email to Estrella dated June 21, 2018). In so doing, Plaintiff claims that

12  "Defendant effectively demoted Plaintiff eliminating his longtime primetime spots on the

13  radio, and placing him in the least desirable spot and least listened to." Pl.'s Opp'n, at 6.

14  Not only has Plaintiff not presented any evidence showing that the Saturday night

15  timeslot is the least desirable or popular, but Plaintiff fails to demonstrate that this

16  change in shift constituted a demotion. Plaintiff was given the same number of hours,

17  and Buhrman's August 27, 2018, email to Plaintiff did not mention any changes in pay,

18  the work performed, or the location of his work; the only difference was the day and time

19  of his program.[4] See Ex. 1.E, Jones Decl., ECF No. 13-1, at 88.

20      Even construing this change as an adverse employment action, which the Court

21  does not, Plaintiff also fails to show a causal link between his complaint of age

22  discrimination and the change in timeslot. Plaintiff attempts to create a genuine dispute

---

[4] Plaintiff also claims that Buhrman "began making more demands on his time, scrutinizing and micromanaging him in a disparaging" way. See Pl.'s Opp'n, at 6. However, this is nothing more than a conclusory statement for Plaintiff has not provided any specific allegations let alone supporting evidence. To the extent Plaintiff is referring to Buhrman asking him to provide his "Photos/bio" or increase his social media postings, Buhrman asked all the mixers to do so, not just Plaintiff, and the other mixers complied with Buhrman's requests. See Ex. 1.E, Jones Decl., ECF No. 13-1, at 88. There was also an email exchange between Plaintiff and Buhrman in which Plaintiff apologized for not providing the correct mixes and Buhrman responded, "no worries, mistakes happen . . . was just trying to figure out where the old music had come from and make sure you were getting my updated emails." See id. at 84–85 (emails dated July 30–31, 2018) (ellipsis in original).

of material fact by alleging that Buhrman was aware of Plaintiff's age discrimination complaint when he informed Plaintiff of the timeslot move on August 27, 2018. See Pl.'s Opp'n, at 6–7. As previously stated, Buhrman declares that he "had no knowledge of [Plaintiff's] complaint of age discrimination" before August 28, 2018. Ex. 2, Buhrman Decl., ECF No. 13-2, at 4 ¶ 9. To contradict Buhrman's statement, Plaintiff cites an email from Estrella to the human resources director in which Estrella forwarded Plaintiff's June 21, 2018, email to her and wrote that Estrella and Buhrman discussed Plaintiff's compensation. See Ex. 1-A, Clark Decl., ECF No. 16-4, at 7. However, it is unclear from this email whether Estrella discussed Plaintiff's allegation of age discrimination with Buhrman, for there is nothing in the present evidentiary record showing that Plaintiff's June 21 email was sent or forwarded to Buhrman. Estrella's email elaborates that Buhrman called Plaintiff on June 21, 2018, and the two discussed transitioning Plaintiff to an hourly rate of pay for the same reasons previously discussed. Compare id., with Ex. 2, Buhrman Decl., ECF No. 13-2, at 3 ¶¶ 5–6. Simply put, one can only speculate from a reading of Estrella's email that Buhrman may have been aware of the age discrimination complaint prior to August 28, 2018, but speculation is insufficient to create a triable issue of fact. In any event, Buhrman's August 27, 2018, email also stated that he previously asked the mixers to provide their "Photos/bios to update [the] Club 102 section" and to "pump[] up their mix shows on social media," but Plaintiff was the only one who had not done either. See Ex. 1.E, Jones Decl., ECF No. 13-1, at 88. Such statements also weigh against a finding that the shift change was made in response to Plaintiff's age discrimination complaint.

In sum, Plaintiff cannot sustain a retaliation claim under FEHA and thus summary judgment as to Plaintiff's First Cause of Action is GRANTED.

///

///

///

///

### B. Second Cause of Action: Failure to Prevent Discrimination in Violation of FEHA

Like retaliation, a discrimination claim under FEHA also requires a showing that the plaintiff suffered an adverse employment action.[5] See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 355 (2000). Furthermore, a failure to prevent discrimination or retaliation claim under FEHA requires the showing of a viable FEHA claim. See Glynn v. Super. Ct., 42 Cal. App. 5th 47, 56 (2019). As discussed above, Plaintiff did not suffer an adverse employment action. Because Plaintiff failed to establish a claim under FEHA, summary judgment is GRANTED as to this derivative claim.

### C. Third Cause of Action: Wrongful Constructive Termination in Violation of Public Policy[6]

In order to prove a constructive discharge, Plaintiff must show that Defendant "either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251 (1994). As set forth above, Plaintiff did not suffer any adverse employment action, let alone intolerable working conditions. Plaintiff's pay was undisputedly reduced to conform with the pay of other mixers at the Station, and his shift change did not alter his pay, the number of hours he worked, the work performed, or the location of his work. Accordingly, Plaintiff cannot establish that Defendant constructively terminated his employment and summary judgment as to this claim is GRANTED.

///
///

---

[5] An age discrimination claim under FEHA requires that the plaintiff be at least 40 years old. See Merrick v. Hilton Worldwide, Inc., 867 F.3d 1139, 1146 (9th Cir. 2017); Cal. Gov't Code § 12926(b). Here, it is undisputed that Plaintiff was under the age of 40 during his employment with Defendant. See Pl.'s Response Def.'s Statement of Undisputed Facts, ECF No. 16-2 ¶ 10.

[6] It is undisputed that Plaintiff resigned on August 28, 2018, after Buhrman informed him of the shift change; Defendant did not formally terminate or fire Plaintiff. See Ex. 1.E, Jones Decl., ECF No. 13-1, at 88.

**D.     Fourth Cause of Action:  Declaratory Relief**

Plaintiff claims that Defendant misclassified him as an independent contractor and now seeks a declaration that he is an employee.  See Compl. ¶¶ 66–67.  However, Defendant does not dispute that Plaintiff was an employee.  See Def.'s Mot., at 19–20; Ex. 1-H, Jones Decl., ECF No. 13-1, at 121 (email from Defendant's business manager) (stating Plaintiff "was never made an IC [independent contractor].").  As such, Plaintiff will be considered an employee and the Court will regard him as such when evaluating the subsequent claims.  Therefore, summary judgment as to Plaintiff's declaratory relief cause of action is GRANTED.

**E.     Fifth Cause of Action:  Failure to Pay Overtime Wages**[7]

California Labor Code § 510(a) provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  According to Defendant, Plaintiff worked three hours or less each week, but Plaintiff claims he worked more than that.  See Pl.'s Response Def.'s Separate Statement of Undisputed Facts, ECF No. 16-2 ¶ 99.  Regardless, Plaintiff was required to seek "written supervisory authorization" before working overtime hours.  See Ex. 3-A, Honeycutt Decl., ECF No. 13-3, at 5 (Defendant's overtime policy); Pl.'s Response Def.'s Statement of Undisputed Facts, ECF No. 16-2 ¶ 100 (no dispute as to existence of overtime policy).  It is undisputed that Plaintiff signed and dated the "Employee Handbook Acknowledgement" which provided, in part, that his "employment [was]

---

[7] In the following causes of action alleging violations of the California Labor Code, Plaintiff primarily relies on the assertion that Defendant misclassified him as an independent contractor instead of an employee and as a result of this misclassification, Defendant failed to pay overtime wages and waiting time penalties and provide meal and rest periods.  See Compl. ¶¶ 72, 77, 85, 105.  As stated above, there is no dispute that Plaintiff was an employee of Defendant.  The Court will thus treat Plaintiff as an employee in evaluating his claims based on the California Labor Code.  With that said, Plaintiff's Opposition to the present Motion simply reiterates that Defendant's mischaracterization of him as an independent contractor resulted in him not getting any of the aforementioned benefits but fails to address the substantive challenges raised by Defendant as to the Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Causes of Action.  See Pl.'s Opp'n, at 8.

governed by the policies described in the Handbook," and that he "never complained to Defendant that he had not been compensated for working more than eight hours in a workday or more than 40 hours in a workweek." Id. ¶¶ 101–02. Because Plaintiff did not seek approval to work overtime in accordance with Defendant's policy, or even inform Defendant that he was doing so, his claim fails.

Even setting aside Defendant's overtime policy, Plaintiff has not provided any evidence showing the number of overtime hours he worked. He only refers to his deposition testimony in which he states that the number of hours varied per day and week, that most overtime hours were spent on social media work, and that he was unable to estimate or provide records as to his amount of social media work. See Ex. 1-C, Clark Decl., ECF No. 16-4, at 17–30; but see Ex. 1.E, Jones Decl., ECF No. 13-1, at 88 (Plaintiff's August 28, 2018, email to Buhrman) ("I post on my personal social media when the time is right, and when I know my followers will read it. Repetitive senseless posting is not my image or brand."). Given the foregoing, summary judgment is GRANTED as to this cause of action.

### F. Sixth and Seventh Causes of Action: Failure to Provide and Record Meal Periods and Failure to Provide and/or Pay for Rest Periods

California Labor Code § 512(a) provides that, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Similarly, an employer must permit an employee to take a rest period and the time "shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." Cal. Code Regs. tit. 8, § 11010(12)(A). "However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours." Id.

///

Here, Plaintiff has not provided any sufficient contradictory evidence that he worked more than three hours a week. During his deposition, Plaintiff did not give a straight answer as to the number of hours he worked per day let alone per week. See Ex. 1-C, Clark Decl., ECF No. 16-4, at 17–30 (speculating as to the number of regular or overtime hours he worked in a day or week). "Though Plaintiff now claims that he worked more than 3.5 hours as to be owed a rest break, five hours as to be owed a meal break, . . . he cannot actually cite to any time when that really occurred." Def.'s Reply, at 7. Absent satisfactory evidence that Plaintiff worked the requisite number of hours, this Court cannot determine whether Plaintiff was entitled to such breaks. Summary judgment is therefore GRANTED as to these claims.

### G.    Ninth and Tenth Causes of Action: Waiting Time Penalties and Failure to Timely Pay Wages Upon Separation of Employment

"If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter . . ." Cal. Lab. Code § 202(a). "If an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Id. § 203(a).

Plaintiff alleges that Defendant "willfully failed to timely pay Plaintiff[] all wages due and owing at the time of termination of employment, including overtime wages and premium pay due for meal period and rest period wages" and thus is owed waiting time penalties. Compl. ¶¶ 106, 113. However, it is undisputed that Defendant mailed Plaintiff his final paycheck and that Plaintiff received it within 72 hours of his resignation. See Pl.'s Response Def.'s Statement of Undisputed Facts, ECF No. 16-2, ¶¶ 108–11. To the extent Plaintiff argues that his final paycheck did not include overtime wages or payments for missed meal and rest periods, Plaintiff is not entitled to those wages for

///

reasons set forth above.  Accordingly, summary judgment is GRANTED as to these claims.

### H.      Eleventh Cause of Action:  Violation of the UCL[8]

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . ." Cal. Bus. & Prof. Code § 17200.  A private plaintiff has standing to assert a UCL claim if he "has suffered injury in fact and has lost money or property as a result of the unfair competition." Id. § 17204; see also Hall v. Time Inc., 158 Cal. App. 4th 847, 852 (2008). Because summary judgment is granted as to the claims for declaratory relief, failure to pay overtime wages, failure to provide and record meal periods, failure to provide and/or pay for rest periods, waiting time penalties, and failure to timely pay wages upon separation of employment, Plaintiff has not suffered an injury, economic or otherwise, and thus lacks standing.  However, Plaintiff's UCL claim is also based on his Eighth Cause of Action for failure to provide accurate itemized wage statements.  See Compl. ¶ 116.  Because Defendant did not move for summary judgment on the Eighth Cause of Action, the Court finds granting Defendant's Motion on that ground would be inappropriate.  Therefore, Defendant's Motion on the UCL claim is DENIED to the extent it is based on the itemized wage statement claim but otherwise GRANTED on all other counts.

### I.      Plaintiff's Prayer for Punitive Damages

A plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Because the Court grants summary judgment on Plaintiff's causes of action for retaliation, failure to prevent discrimination, wrongful constructive termination, declaratory relief, failure to pay overtime wages, failure to provide and record meal periods, failure to provide and/or pay for rest periods, waiting time penalties, and failure to timely pay wages upon separation of employment, the issue of punitive

---

[8] This claim is premised on Plaintiff's declaratory relief and California Labor Code causes of action, and not his FEHA or wrongful constructive termination claims.  See Compl. ¶¶ 116–21. Furthermore, Plaintiff did not oppose or expressly address Defendant's Motion as to this claim.

1  damages on those claims is moot.  Furthermore, punitive damages are unavailable
2  under both the California Labor Code and the UCL.  See Cleveland v.
3  Groceryworks.com, LLC, 200 F. Supp. 3d 924, 964 (N.D. Cal. 2016).  Accordingly,
4  Defendant's Motion as to the prayer for punitive damages is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment, ECF No. 11, is GRANTED in part and DENIED in part.  This case shall proceed on Plaintiff's Eighth Cause of Action and Eleventh Cause of Action based on an alleged failure to provide accurate itemized wage statements only.  Otherwise, summary judgment is GRANTED as to all other causes of action and the prayer for punitive damages.  Because the Court finds summary judgment is warranted on the aforementioned claims based on the analysis above, Defendant's Objections and Reply to Plaintiff's Evidence, ECF No. 17-1, are DENIED as moot.

IT IS SO ORDERED.

Dated: February 14, 2023

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE